## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

OSCAR BONILLA                                CIVIL ACTION NO. 19-1028

                                             SECTION P

VS.

                                             JUDGE TERRY A. DOUGHTY

SHERIFF KEVIN COBB, ET AL.                   MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

Plaintiff Oscar Bonilla, a prisoner at Franklin Parish Detention Center ("FPDC")

proceeding pro se and in forma pauperis, filed the instant proceeding on August 7, 2019, under

42 U.S.C. § 1983.  He names the following defendants: Sheriff Kevin Cobb, Warden Chad Lee,

and Nurse Jane Doe.[1]  For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff has been confined in FPDC for four years.  [doc. # 14, p. 2].  He raises a host of

claims concerning his and others' confinement in FPDC:

    ° He is deprived of adequate amounts of food;

    ° Inmates are not provided soap or bleach to clean the scum, algae, and bacteria
    in the dormitory and on the shower walls and curtains;

    ° The ceiling in the dormitory is covered in mold, and prisoners contract sinus
    infections because they inhale the falling mold particles;

    ° A nurse does not answer prisoners' medical requests, prisoners must suffer
    until they can obtain care, and adequate care is not guaranteed;

    ° Inmates are deprived of outdoor exercise because they are taken outside, at
    most, only two days each week for twenty-five minutes;

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

° Because the dorms have only garbage bags and lack garbage cans, prisoners spill food on the floor, which builds up in corners and causes mice to enter living quarters;

° "The air quality is bad due to some prisoners . . . smoking vapor cigarettes (E-cigarettes) which poses [risks] to other prisoners' health";

° Inmates are not provided bedding and clothes to keep warm, and if an inmate purchases a blanket, officials will take the inmate's state-issued blanket;

° Some inmates require a special diet to meet their health or religious requirements, yet officials do not "honor" those diets;

° Inmates are fed in unsanitary conditions: food is served by "guys" wearing short-sleeved shirts which expose their "arms full of hair," some servers do not wear hair nets, and others serve food while wearing gloves they previously used to press buttons on the wall and with which they touched various surfaces in the facility;

° Inmates fill out requests for case law, but they never receive any because the facility's law library is inadequate;

° When inmates request time in the library, they are denied, and "there is no communication going on between the jailhouse lawyer and the prisoners";

° Plaintiff does not speak English well and, because there is no interpreter at the facility, his "case" has been "hurt" and he has been barred from court;

° Plaintiff is not allowed to practice his Catholic religion because, while there are Christian services, there is no Catholic mass;

° Officials copy inmates' incoming legal mail, shred the originals, and give inmates the copies;

° Plaintiff's family has been unable to visit him for four years because the facility is too distant;

° Plaintiff "cannot seek mental health treatment" because the facility lacks a social worker; and

° Nurse Jane Doe diagnoses prisoners using her "own opinion" and tries to treat prisoners "when she is not qualified to do so."

Plaintiff is suffering from stress, mental anguish, emotional injury, headaches, depression, and another unspecified physical injuries.  [doc. #s 8, p. 7; 14, p. 2].  He seeks:

2

(1) declaratory relief;

(2) outdoor exercise for inmates three times each week for one hour each day;

(3) Catholic mass and other Catholic services;

(4) a 2,000-calorie diet for inmates;

(5) special diets for inmates with certain religious and health requirements;

(6) soap, bleach, a straw broom, and scrub pads with which to clean;

(7) proper bedding and clothes with which to keep warm;

(8) a transfer of every convicted inmate to a facility operated by the Louisiana Department of Public Safety and Corrections ("LDPSC") so that the inmates can "help themselves legally, participate in rehabilitative programs, see a social worker, meet their mental health needs, enjoy [] outdoor activities, and get visits . . . .";

(9) an order instructing officials to stop shredding prisoners' original legal mail;

(10) an order preventing Nurse Jane Doe from diagnosing prisoners using her "own opinion" and "trying to treat prisoners when she is not qualified to do so";

(11) $500.00 in compensation from each defendant;

(12) $500.00 in punitive damages from each defendant;

(13) court costs; and

(14) "any additional relief this court deems just, proper, and equitable."

## <u>Law and Analysis</u>

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2]  See *Martin v. Scott,* 156 F.3d

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis*, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[3] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted

---

[3] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

source omitted).[4]  However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

### A. Calorically-Deficient Diet

Plaintiff claims that he is "being deprived of adequate amounts of food to sustain [him] on a daily basis."  [doc. # 8, p. 4].  He receives "one scoop of food on the main portion of every meal be it rice, potatoes, grits, oatmeal, beans, etc."  [doc. # 14, p. 2].  "Because of this deprivation of adequate servings of food Plaintiff has suffered hunger pains, los[s] of weight, weakness, etc." and could experience "health problems" in the future.  *Id.* at 2-3.  He seeks "adequate amounts of food appropriate enough to guarantee [a] 2,000 calorie diet [inmates are] supposed to get . . . . [sic]."  [doc. # 8, p. 9].

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities.  Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation."  *Talib v. Gilley*, 138 F.3d 211, n.3 (5th Cir. 1998) (internal quotation marks and quoted sources omitted).  "Even on a regular, permanent basis, two meals a day may be adequate."  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

Here, Plaintiff does not describe an extreme deprivation.  For instance, while he indicates that he receives "one scoop of food on the main portion of every meal[,]" he does not specify how many other, minor portions of food he receives, how large the scoop he receives is, how

---

[4] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement."  *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

many meals he receives each day, whether he can obtain more meals or portions, or whether he can obtain additional calories through the facility's commissary or other means.  While he does indicate that he receives fewer than 2,000 calories each day, he does not clarify how many fewer or explain why fewer than 2,000 calories amounts to serious deprivation in relation to, for example, his weight, body-mass index, or health needs.

He suffers from hunger pains, but this does not reflect the denial of a minimal measure of life's necessities.  See *Berry*, 192 F.3d at 508 ("Berry has not alleged any specific physical harm, other than hunger pains.").  While he alleges that he lost weight, he does not specify how much, whether the weight loss was harmful, or whether the weight loss posed a risk of harm.  See *Talib*, 138 F.3d at n.3 (doubting, where the plaintiff lost 15 pounds from missing one out of every nine meals, that the plaintiff was denied a minimal measure of life's necessities); *Randall v. McLeod*, 68 F.3d 470 (5th Cir. 1995) ("Randall contended in his complaint that he suffered hunger pains and weight loss as a result of missing lunch on two days of the lockdown, not that the nutritional value from the meals he did receive was insufficient to preserve his health."); *Hyder v. Perez*, 85 F.3d 624 (5th Cir. 1996) (finding no plausible claim where the plaintiff alleged that he received inadequate amounts of food, causing him "hunger pains, headaches, decreased energy, weight loss, and emotional distress.").

Further, while he alleges that the calorically-inadequate diet could expose him to health risks in the future, he does not plausibly describe a *substantial* risk.  The Court should dismiss this claim.

### B. Unsanitary Conditions

Plaintiff claims that he and others lack soap or bleach to remove scum, algae, and bacteria from the dormitory, the shower walls, and the shower curtains.  [doc. # 8, p. 4].  The

ceiling in the dormitory is covered in mold, and prisoners contract sinus infections because they inhale the falling mold particles.  *Id.*  He adds that, because he must breathe mold, mildew, bacteria, *and smoke from e-cigarettes*,[5] he "suffer[s] occasional coughing, chest pain, shortness of breath, headaches, irritation, nasal congestion, respiratory issues, and sinus problems."  [doc. # 14, p. 3].  His "problems" are not "acute," but the conditions place him "at risk of future injury."  *Id.*

"[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  *Talib*, 138 F.3d at 215.  Nor does it "require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."  *McAllister v. Strain*, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009).  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982).  Jails must only provide reasonably adequate sanitation.  *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986).  "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."  *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).

Here, the alleged unsanitary conditions, while unpleasant, do not amount to a constitutional violation.  Compare *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (finding that "extremely filthy" cells with "crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls . . . would present a substantial risk of serious harm . . . ."), with *Davis v. Scott*, 157 F.3d 1003 (5th Cir. 1998) (holding that confinement for three days

---

[5] Below, the undersigned will address Plaintiff's claim concerning second-hand smoke/vapor from e-cigarettes.

in a cell with "blood on the walls and excretion on the floors and bread loaf on the floor" did not

amount to a claim). The conditions alleged do not, in other words, reflect an extreme deprivation

of any minimal civilized measure of life's necessities.[6]  The Court should dismiss these claims.

### C. Mice

Plaintiff claims that, because the dorms have only garbage bags and lack garbage cans,

prisoners spill food on the floor, which builds up in corners and causes mice to enter living

quarters. [doc. # 8, p. 5].  He does not, however, claim that the presence of the mice deprived

him of an identifiable human need.  The Court should dismiss this claim.

### D. Lack of Outdoor Exercise

Plaintiff alleges: "We are not being taken outside enough."  [doc. # 8, p. 4].  "We are

take[n] outside maybe twice a week for 25 minutes if we're lucky."  *Id.* at 5.  "We should at least

go outside three times a week for an hour each time otherwise we are being deprived of outdoor

exercise."  *Id.*  Because he is "not afforded adequate exercise outside of [the] dormitory, [he] has

developed several physical complications: knees, ankles, etc. due to being forced to try to

exercise in an 8x8 bathroom."  [doc. # 14, p. 3].  He seeks "outdoor exercise 3 days a week for

an hour each time."  [doc. # 8, p. 8].

While recreation and exercise are certainly identifiable life needs,[7] Plaintiff does not state

a plausible claim.  While he was allegedly deprived of some *outdoor* exercise, he does not

---

[6] District courts repeatedly hold that the presence of mold and dampness does not render
confinement unconstitutional.  See, e.g., *Eaton v. Magee*, 2012 WL 2459398, at *5 (S.D. Miss.
June 27, 2012); *Barnett v. Shaw*, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011);  *Reynolds
v. Newcomer*, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010).

[7] See *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688
F.2d 266 (5th Cir. 1982) (favorably citing other courts' opinions that "inmates need regular
exercise to maintain reasonably good physical and psychological health.").

describe an extreme deprivation of exercise.  He was able to exercise twice each week outside for twenty-five minutes.  Moreover, he does not allege that he could not exercise inside.[8]  While he suggests—but does not specify—that he is limited to exercising in an "8x8 bathroom," he does not specify why this space is inadequate to his needs.  See *Ruiz*, 679 F.2d at 1152 ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted).  Plaintiff does not claim that his inability to enjoy time outside deprived him of a minimal civilized measure of life's necessities or otherwise amounted to an extreme deprivation.

Moreover, Plaintiff does not plausibly allege that he was exposed to a substantial risk of serious harm.  He alleges that he suffered "complications" with his knees and ankles, but these unspecified injuries do not reflect a substantial risk of serious harm.  See *Hernandez*, 522 F.3d at 560-61 (finding, where the plaintiff alleged a denial of outdoor and out-of-cell exercise for thirteen months, that even if there was a "fact issue as to whether [the plaintiff] suffered from muscle atrophy, stiffness, loss of range of motion, and depression, there [was] nonetheless no indication these conditions posed a substantial risk of serious harm.").  The Court should dismiss this claim.

---

[8] See *Lewis v. Smith*, 277 F.3d 1373 (5th Cir. 2001) (finding a similar claim "meritless because it [was] premised on the erroneous assumption that [the plaintiff] had an absolute right to exercise or recreation."); *Carter v. Hubert*, 452 F. App'x 477, 478-79 (5th Cir. 2011) ("In regard to his unconstitutional conditions of confinement claims that his placement in a restrictive cell program for seven days at a time, for a total of 26 days, resulted in a lack of exercise, deprivation of meals, and flu-like symptoms due to a severely cold cell, Carter has not demonstrated that prison officials violated his Eighth Amendment rights."); *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), on reh'g, 636 F.2d 1364 (5th Cir. 1981) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise.").

### E. Exposure to E-Cigarettes

Plaintiff alleges that "the air quality is bad due to some prisoners walking around smoking vapor cigarettes (E-cigarettes) . . . ."  [doc. # 8, p. 5].  His exposure to the "toxic chemicals flowing from e-cigarettes," in addition to his exposure to mold, mildew, and bacteria, causes him to "suffer occasional coughing, chest pain, shortness of breath, headaches, irritation, nasal congestion, respiratory issues, and sinus problems."  [doc. # 14, p. 3].  As above, his "problems" are not "acute," but the conditions place him "at risk of future injury."  *Id.*

These allegations do not reflect an extreme health deprivation.  Plaintiff alleges that "*some* prisoners walk[] around smoking vapor cigarettes . . . ."  [doc. # 8, p. 5 (emphasis added)].  Without more, this does not reflect an exposure to *unreasonably high* levels of toxic chemicals emanating from the e-cigarettes/vapor cigarettes.  See *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (opining that a plaintiff must "show that he himself is being exposed to unreasonably high levels of" environmental tobacco smoke ("ETS")).[9]  The risk Plaintiff describes is not "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *See id.* at 36.  The Court should dismiss this claim.

---

[9] Compare *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (concluding, where the plaintiff claimed that he was exposed to second-hand smoke during bus rides to and from work assignments, that the plaintiff's "sporadic and fleeting exposure to second-hand smoke might have been unwelcome and unpleasant, [but] it did not constitute unreasonably high levels of ETS.") with *Murrell v. Chandler*, 277 F. App'x 341, 343 (5th Cir. 2008) (finding that the district court erred in dismissing an "ETS claim" where the plaintiff presented evidence that "he was exposed to excessive levels of ETS 12 to 24 hours a day in his housing unit and at the factory where he worked [and] the smoke was often so thick in his housing unit that he had to hold a wet towel over his face to breathe . . . ."); and *Ware v. Batson*, 480 F. App'x 247, 248 (5th Cir. 2010) (denying summary judgment where the plaintiff's dormitory "did not have a good ventilation system; over half of the inmates in his dorm and some employees smoked; inmates smoked inside when the unit's doors were locked; inmates also smoked in the yard in the front of the building and smoke went into the dorm through the windows; and Ware was exposed to smoke in the stands at the ball field, while he walked to and from the dining hall, and while he worked in the kitchen.").

### F. Exposure to Cold

Plaintiff claims: "most times we are subject to extreme cold and we are not given bedding and clothing to keep warm.  If we purchase a blanket from canteen and also have a state issue they will take the state issue. [sic]."  [doc. # 8, p. 5].

Plaintiff did not comply with undersigned's instruction to elaborate.  His initial, thin allegations do not plausibly reflect a serious deprivation of warmth.

Plaintiff does not specify when, or how long, in his four years of confinement at FPDC, he was deprived of adequate bedding and clothing.  While not dispositive, but certainly telling, Plaintiff filed this proceeding in August (i.e. a summer month in Louisiana).  His terse allegations do not plausibly reflect exposure to "the type of extremely cold conditions that have been deemed a denial of the minimal measure of life's necessities."  See *Young v. McCain*, 760 F. App'x 251, 257–58 (5th Cir. 2019) (citing *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); *Alex*, 225 F. App'x at 314 (reciting prisoner's nonfrivolous Eighth Amendment allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk.")).  The Court should dismiss this claim.

### G. Unsanitary Food

Plaintiff claims that he is "being fed under unsanitary conditions: food is being served by guys wearing short sleeve shirts with arms full of hair, some do not wear hair nets and with

gloves they wear throughout the day that's being used for several purposes; they press buttons on the wall, touch fences, cart wagons, door knobs and trash and serve you with the same gloves. [sic]."  [doc. # 8, p. 6].

Notably, Plaintiff does not allege that the inmates touch his food with the unsanitary gloves.  Nor does he allege how long these food-preparation conditions persisted.

Ultimately, while perhaps unpleasant and unsanitary, Plaintiff does not describe an extreme deprivation of health, hygiene, or sanitation.  See *Flowers v. Dent*, 21 F.3d 1109 (5th Cir. 1994) (finding no plausible claim where the plaintiff alleged that the kitchen facilities were unsanitary, that the "cleaning program was 'irregular and ineffective,'" that inmate workers were not properly trained, and that "food storage shelves were soiled with dirt and rodent droppings . . .."); *Hodges v. Frasier*, 176 F.3d 479 (5th Cir. 1999) (finding no "clear or obvious error" in the district court's decision "that the possibility that HIV-positive inmates were involved in food preparation did not state a constitutional claim because 'AIDS is not transmitted by casual contact such as food preparation.'").

In addition, while Plaintiff alleges that he was exposed to a risk of harm, he does not plausibly allege that he was exposed to a *substantial* risk of serious harm.  The Court should dismiss this claim.

**H. Visitation**

Plaintiff claims: "In the 4-year[s] I've been here I haven't had a visit because it is too far and my family doesn't have a way.  Had I been in a D.O.C. facility where there are bus rides to and fro my family would be able to visit. [sic]."  [doc. # 8, p. 7].

While this condition implicates a need for social interaction, Plaintiff does not identify an

individual or entity responsible for confining him in a facility far from his family.[10]

Moreover, a prisoner has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Further, the Court lacks authority to transfer Plaintiff. In Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss this claim and the associated request for a transfer.

---

[10] Plaintiff does not allege that he lacked other means by which to contact his family (for example, email, telephone, letters, or video), and he does not allege that any defendant deliberately denied him visitation.

### 3. Standing

Plaintiff seeks relief on behalf of other prisoners.  He claims that, because the ceiling is covered in mold, other prisoners inhale it while they sleep.  [doc. # 8, p. 4].  He claims that prisoners who smoke vapor cigarettes expose other prisoners to health risks.  *Id.* at 5.  Some prisoners require special diets because of their religion.  *Id.* at 5-6.  When prisoners request medical attention, "either the nurse do[es] not answer . . . or we have to suffer until we can be seen by someone and adequate medical care is still not guaranteed."  *Id.* at 4.

Plaintiff asks the Court to provide outdoor exercise for himself and others.  *Id.* at 8.  He wants defendants to "feed us" adequate meals, to "provide special diets to those whose religions and health requires such," to "give us" cleaning supplies, to "provide us" with adequate bedding and clothing, to "transfer every D.O.C. prisoner with 5 years or more to a D.O.C facility," to stop shredding prisoners' original legal mail, and to order Nurse Jane Doe to stop diagnosing prisoners and to send prisoners to a hospital when they request care.  *Id.* at 9-10.

To the extent Plaintiff seeks relief on behalf of other prisoners, he lacks standing. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others.  *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").  In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that, "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."  See *Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at

*2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[11]

In addition, Plaintiff may not act as counsel for other prisoners.  See, e.g., *Wade v. Carrollton–Farmers Branch Indep. Sch. Dist*., 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis.").  Parties can represent themselves or they can be represented by an attorney; they cannot be represented by a non-lawyer.  See *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1308-09 (2d Cir. 1991) (reviewing authority)).

As Plaintiff lacks standing to pursue relief on behalf of other prisoners, the Court should dismiss these claims and requests for relief.

**4. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'"  *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)).  A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care

---

[11] See also *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist*., 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist*., 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

claim).  A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference."  *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).  "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.  Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet."  *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff alleges: "I cannot seek mental treatment here because there is no social worker to assist me with my mental health issues, and I'm catching headaches and becoming depressed."  [doc. # 8, p. 7].  Plaintiff, however, does not identify a responsible defendant. Relatedly, he does not allege that he requested mental-health care or, even if he did, that any named defendant was deliberately indifferent to his needs.  Further, by alleging that he is beginning to suffer headaches and is "becoming depressed," it appears Plaintiff has yet to suffer a serious medical need.

Plaintiff also seeks an "injunction ordering defendant Jane Doe (nurse) to stop diagnosing prisoners, using her own opinion, trying to treat prisoners when she is not qualified to do so, and to start sending prisoners to a hospital when they request medical assistance from a doctor. [sic]." [doc. # 8, p. 10]. As Plaintiff does not specify whether he requested care from the nurse or, more specifically, whether the nurse attempted to diagnose or treat him without being qualified to do so, it appears Plaintiff simply requests relief on behalf of other prisoners. In this respect, he lacks standing.

Even assuming he did seek care from the nurse and that the nurse diagnosed or treated him, he does not state a plausible claim because treating him, even if unqualified to do so,[12] does not reflect deliberate indifference. Plaintiff is not constitutionally entitled to always see a doctor instead of a nurse because prisoners are not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); see *Saldivar v. Davis*, 698 F. App'x 198, 199 (5th Cir. 2017) ("Saldivar's contention that she was denied medical care because she was not seen by the prison doctor, instead of the prison nurse, until 10 days after her fall does not amount to deliberate indifference.").

Finally, Plaintiff alleges that, because he "did not receive proper medical care after complaining about his problems, [he] has been forced to continually undergo the above health conditions." [doc. # 14, p. 4]. He adds that Nurse Jane Doe "consistently does not reasonably respond to [his] medical needs . . . ." *Id.* at 5. Ultimately, this claim is conclusory: he does not specify when or if he requested care, the specific needs for which he requested care, what he told

---

[12] Plaintiff neither specifies the treatment the nurse is unqualified to render nor explains why the nurse is unqualified.

Nurse Jane Doe, what Nurse Jane Doe told him, how Nurse Jane Doe treated him 'improperly,'

or how Nurse Jane Doe responded 'unreasonably.'

The Court should dismiss these claims.

## 5. Access to Court

Plaintiff claims: (1) inmates fill out requests for case law, but they never receive any

because the facility's law library is inadequate; (2) when inmates request time in the library, they

are denied; (3) "there is no communication going on between the jailhouse lawyer and the

prisoners"; and (4) because there is no interpreter at the facility, his "case" has been "hurt" and

he has been barred from court.  [doc. # 8, p. 6].  In an amended pleading, he alleges that, because

he "has been denied access to a law library and denied transfer to a D.O.C. facility in which to

receive proper help, [he has] been barred out of court."  [doc. # 14, p. 3].  "This problem has

caused actual injury to [his] legal case."  *Id.*

To succeed on a claimed denial of access to courts, a plaintiff must show that he lost an

actionable claim or was prevented from presenting such a claim because of the alleged denial.

*Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)

(holding that to state a claim of denial of access to the courts, a plaintiff must demonstrate that

his position as a litigant was prejudiced as a direct result of the denial of access).  "[T]he

complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure

8(a), just as if it were being independently pursued, and a like plain statement should describe

any remedy available under the access claim and presently unique to it."[13]  *Christopher v.*

*Harbury*, 536 U.S. 403, 417-18 (2002).

---

[13] "The underlying claim must be described well enough to apply the frivolity test and to show that its 'arguable' nature . . . is more than hope."  *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

"Denial-of-access claims take one of two forms: forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher*, 536 U.S. at 413-14).

"To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012); see *Christopher*, 536 U.S. at 413-14 (("These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.").

With respect to the inability to access a library or a claim that a library was deficient, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not

have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* The "inmate must show that a nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or that the deficiency is currently preventing his presentation of such a claim." *Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017).

Here, Plaintiff refers only to his "case"; consequently, he does not sufficiently identify a non-frivolous, arguable claim that he could not raise, that he raised and lost, or for which he could not obtain a remedy. See *Sanchez*, 689 F. App'x at 799 ("His assertions that he has been hindered in presenting claims challenging his criminal conviction and prison disciplinary cases are conclusory. He fails to describe the claims with the particularity needed to evaluate whether they were nonfrivolous and does not explain with specificity how the absence of legal materials and assistance in Spanish actually hindered those claims.").

Moreover, while Plaintiff alleges that the law library is inadequate and that he lacks access to the law library, jailhouse counsel, and an interpreter, he does not allege that his "case" was harmed *because* of these hindrances. Plaintiff does not allege, for instance, how access to the law library would have aided him, "how he would have proceeded with access to a law library," what specific cases or law he would have cited if he had access to the law library, "or how [his] claims would have been meritorious." See *Hopkins v. Ogg*, 2019 WL 3761360, at *3 (5th Cir. Aug. 8, 2019). Likewise, he does not explain how the absence of an interpreter or "jailhouse counsel" hindered his claims. See *Sanchez*, 689 F. App'x at 799.

The Court should dismiss these claims.

**6. Incoming Mail**

Plaintiff claims that officials copy prisoners' incoming legal mail, shred the originals, and give prisoners the copies.  While this claim implicates Plaintiff's right to freedom of speech, he does not allege that officials copied and shredded *his* original legal mail.  As above, to the extent he seeks relief on behalf of others, he lacks standing.  Moreover, even assuming officials did copy and shred his original legal mail, he does not articulate any cognizable harm or threat of harm from receiving only facsimiles.  See, e.g., *Sandoval v. Fox*, 135 F. App'x 691, 691 (5th Cir. 2005) (affirming dismissal of a plaintiff's claim that guards improperly distributed prison mail because the plaintiff was not deprived of his mail and did not otherwise suffer any actual harm).

To the extent Plaintiff claims that officials opened his legal mail in his absence, he fails to state a plausible claim on which relief can be granted because "prison officials may open incoming legal mail to inspect it for contraband." *Jones v. Mail Room Staff*, 74 F. App'x 418, 419 (5th Cir. 2003) (citing *Brewer v. Wilkinson*, 3 F.3d 816, 820-21 (5th Cir. 1993)). Similarly, "prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected." *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015) (citing *Brewer*, 3 F.3d at 825).

The Court should dismiss this claim.

**7. Right to Practice Religion**

Plaintiff claims that he is not allowed to fully practice his religion "because they do not hold Catholic mass."  [doc. # 8, p. 6].  "They have Christian services, but none for Catholics." *Id.*

"To fall within the purview of the Free Exercise Clause, a claimant must possess a

sincere religious belief."[14]  *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019).  The Court must then evaluate whether the regulation or practice "is reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "An inmate retains his right to the free exercise of religion, subject to reasonable restrictions stemming from legitimate penological concerns."  *Id.*

Courts consider: "(1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation in question."  *Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (internal quotation marks and quoted source omitted).

Here, the undersigned instructed Plaintiff to amend and (1) explain the circumstances surrounding his claim; (2) allege whether he possesses a sincere religious belief; (3) explain how, and to what extent, defendants' actions limit or affect his exercise of religion; (4) address the four factors above; and (5) state whether he seeks relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Plaintiff filed an amended pleading, but he did not address this claim.  Thus, it appears he abandoned this claim.  Moreover, he does not allege whether he harbors a sincere religious belief, and he does not attempt to address any of the four factors above or to explain how

---

[14] See *Wisconsin v. Yoder*, 406 U.S. 205, 216 (1972) (noting that "philosophical and personal . . . belief does not rise to the demands of the Religion Clauses"); *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1212 (5th Cir. 1991), on reh'g, 959 F.2d 1283 (5th Cir. 1992) (citation omitted) ("[T]he Free Exercise query is whether this particular plaintiff holds a sincere belief that the affirmation is religious.").

defendants' actions limit or affect his exercise of religion.   As he fails to plead enough facts, the Court should dismiss this implausible claim.

<u>Recommendation</u>

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Oscar Bonilla's claims on behalf of other inmates be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for appointed counsel, [doc. # 3], and motion for preliminary injunction, [doc. # 8, p. 9], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 18th day of November, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE